IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:24-cr-08 (MSN) |
| | ) | |
| MICHAEL BAXTER, | ) | Sentencing: June 6, 2024 |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S POSITION ON SENTENCING

Michael Baxter comes before the Court for sentencing having admitted and accepted responsibility for his misconduct. Mr. Baxter fully recognizes the egregious nature of his wrongdoing and the severity of the harm that he caused to the children who were subjected to sexual abuse during the livestream sessions that he paid for. He fully recognizes why he is facing a mandatory minimum sentence of 25 years. He is a 51-year-old man whose childhood was marked by turbulence and dysfunction and who has struggled with depression and forming personal relationships since those early years. As harmful as Mr. Baxter's conduct was, he did not record, distribute or otherwise display the livestream sessions in which he participated. He has no history of direct sexual contact or communication with minors. He was not part of any online community discussing or trading child pornography.

There is no dispute that this is an extremely serious case. Indeed, the offense of conviction requires a lengthy period of incarceration in all cases, and an even greater term of years in his case as a result of prior conviction for possession of child pornography. As a result, the issue is not whether to impose a lengthy sentence. Rather, it is determining the minimum sentence available that satisfies the purposes of sentencing. Mr. Baxter, through counsel, respectfully submits that the mandatory minimum sentence of 25 years, followed by intensive

lifetime supervision and treatment, satisfies the goals of sentencing in this case. It is a sentence that will keep him incapacitated well into his 70s, followed by intensive court supervision, but that offers him a chance to live outside of prison. For someone who has shown remorse and an understanding of the egregiousness of his wrongdoing, who made it known early in this prosecution that he wished to plead guilty, and who did not compound the harm he caused by recording or distributing the sexual abuse in which he participated, it is respectfully submitted that a 25-year sentence is sufficient. Such a sentence is also warranted when considered in relation to sentences imposed in like cases in this district in recent years.

Moreover, beyond the sentence of incarceration imposed, incarceration will be followed by lifetime intensive supervision for Mr. Baxter, including treatment, strict computer monitoring and sex-offender registration, which will directly address risk factors present in this case. For all these reasons, it is respectfully submitted that a sentence of 25 years is sufficient but not greater than necessary to achieve the goals of sentencing in this case.

I.      **SENTENCING ARGUMENT**

    **A. Legal Standard**

The mandate of 18 U.S.C. § 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in Section 3553(a)(2). This requirement is not just another factor to be considered along with the others set forth in Section 3553(a), but instead, "sufficient, but not greater than necessary" sets an independent limit on the sentence. In short, the law requires federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing.

To be sure, determining what sentence is sufficient is greater is no straightforward task. It entails a multi-faceted, nuanced assessment of the factors listed in § 3553(a).[1] This much is clear, however: the determination does not entail the rote, mathematical calculation set forth in the sentencing guidelines. In determining what sentence is sufficient but not greater than necessary, courts need not point to "'extraordinary' circumstances to justify a sentence outside the Guideline range." *Gall v. United States*, 552 U.S. 38, 47 (2007). A below-guidelines sentence may be appropriate if the district court determines that "the Guidelines sentence should not apply, perhaps because (as the guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual guidelines to apply, perhaps because the guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Rita v. United States*, 551 U.S. 338, 351 (2007) (citation omitted). Thus, while the sentencing court must begin its analysis by correctly calculating the advisory sentencing range, the court is then free in light of the other statutory sentencing factors to impose an entirely different sentence. This is because, under *Rita*, a district court is free simply to disagree, based on the § 3553(a) sentencing factors, with the sentencing guidelines' "rough approximation" of the appropriate sentence for any given case. *Id*.

---

[1] The § 3553(a) factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the Guidelines range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following: the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

### B. A Sentence of 25 Years Is Sufficient But Not Greater Than Necessary In This Case

#### a. Mr. Baxter's Personal History and Characteristics

Mr. Baxter's history is largely marked by social isolation and loneliness.  He is the oldest of two sons born and raised by his parents in a dysfunctional household.  As Mr. Baxter described to the Probation Officer, his mother was a long-time functioning alcoholic who, when under the influence, could become physically abusive to family members.  Mr. Baxter grew up in fear of his mother and her unpredictable moods.  Mr. Baxter's father had his own struggles surrounding his mental health, which worsened as he aged.  His mother's substance abuse and his father's mental health were a destructive combination:  they frequently argued, which often escalated to violent altercations and his mother "'tried to kill my (his) dad three times.'"  PSR ¶¶ 135-136.

In addition to the tense emotional environment, money was also a regular source of struggle for Mr. Baxter's parents, which added to the stress in the household.   PSR ¶ 135.  Despite being close in age, Mr. Baxter and his brother never had a particularly close relationship, which is sadly still true today.  Whether because he was the older sibling, or perhaps due to a difference in personality, Mr. Baxter appears to have been more affected than his brother by his mother's mood swings and alcoholism as well as their parents' strained relationship.  In addition to the tumult in the family home, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Suffice it to say, Mr. Baxter's childhood was from idyllic, and as a result, his difficulty forming lasting personal relationships appears to have started at an early age.  As his brother poignantly relayed to the Probation Officer, he is not sure that Mr. Baxter has ever had a friend.  PSR ¶ 150.  School did not prove to be a refuge or salve for Mr. Baxter either.  While he

graduated on time, he struggled academically throughout high school, which is not uncommon for children who experience abuse or neglect at home. After graduation, with few immediate options for employment, Mr. Baxter chose to serve his country and enlisted in the U.S. Navy. He served for 4 years and through 2 deployments, working as a Mess Management (Culinary) specialist on aircraft carriers. He received an Honorable Discharge in 1998. PSR ¶ 156.

Mr. Baxter's employment history after the Navy is also emblematic of someone who was adrift and suffered from depressed moods. After leaving the Navy, Mr. Baxter was able to use skills gained in the military to find employment with several different restaurants throughout Northern Virginia. For many years, he also worked at a reptile store in Manassas. But he was never able to gain enough footing or form lasting relationships in order to turn his jobs into a sustainable career, whether in the restaurant industry or working with animals. PSR ¶¶ 156-161.

An undercurrent of loneliness and isolation continued to pervade Mr. Baxter's adult life. For nearly a decade, he turned to alcohol as a coping mechanism, unfortunately following his mother's path. Thankfully, he was able to cease his abuse of alcohol on his own, as he saw the long-term debilitating impact that it had on his mother. PSR ¶ 151. Subsequently, however, he seems to have retreated to the internet and the online world, replacing one concerning, addictive behavior with a far more serious one. In 2008, Mr. Baxter was arrested and charged with possession of child pornography. That arrest came about when his then-girlfriend, his only significant adult relationship, discovered images on his computer and contacted police. His arrest, which forced him to confront his behavior, caused him to seek mental health therapy for the first time. ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

After receiving these diagnoses, Mr. Baxter then participated in individual counseling through the VA until his incarceration in 2009.  PSR ¶ 146.

In retrospect, Mr. Baxter recognizes that he should have continued individual mental health therapy after his release from serving his 18-month sentence in Prince William County.  Instead, he focused on the many court-ordered requirements that he had to fulfill while on probation.  He participated in sex offender treatment as required, complied with all registry requirements, and was successfully discharged from probation in August 2015, without having incurred any violations.  PSR ¶ 126.  While he complied with the outward requirements of court supervision, it seems clear that Mr. Baxter did not fully confront and address the root cause of his behavior and desire to view child pornography.

In 2017, Mr. Baxter's mental health spiraled downward when his father, who suffered from Parkinson's disease, and for whom Mr. Baxter cared for in his later years of life, died unexpectedly of a heart attack while Mr. Baxter was present (Mr. Baxter's mother had also died suddenly and at a relatively early age from a blood clot five years prior).  PSR ¶ 134.  For Mr. Baxter, the death of his father was especially difficult to bear.  For many years before his death, his father was the only person with whom Mr. Baxter had a close relationship.  After his father died, Mr. Baxter turned inward and towards the internet even further.

In sum, Mr. Baxter has lived a relatively lonely and depressed life.  In turn, his isolation and inability to develop a social network or rewarding career seem to have contributed to his deviant behavior.  It is a cycle that Mr. Baxter wants to stop and that can be stopped with intensive treatment and therapy.  Mr. Baxter recognizes this and has asked for such treatment.  *See* Exhibit 1, Letter from M. Baxter.  Shortly after his detention at the Alexandria Detention

Center, Mr. Baxter sought therapeutic support from the mental health staff and started taking psychotropic medication consistently for the first time in his life. PSR ¶¶ 144, 147.

### b. The Nature of the Offense

Mr. Baxter has pleaded guilty and accepted responsibility for his grievous wrongdoing. He participated in and paid for the livestream sexual abuse of children in the Philippines arranged by their caregivers in exchange for money. While there is no question that Mr. Baxter was trying to evade detection, he is a relatively unsophisticated technology user. His username included his last name and date of birth.

Mr. Baxter's conduct was abhorrent. He knows this and has attempted to express his remorse for his conduct. *See* Exhibit 1. As awful as Mr. Baxter's conduct was, he was not the organizer or creator of the livestream sessions. The children were subject to horrific abuse before and apart from Mr. Baxter's involvement, and, tragically, many likely continue to be abused today. UNICEF has estimated that 80% of Filipino children are vulnerable to online sexual abuse, calling the Philippines the "center of child sex abuse materials production in the world."[2]

This is a crime that Mr. Baxter could not have committed without the internet, and therein lies one of the most significant dangers of this modern tool. While Mr. Baxter certainly had a history of viewing child pornography, he has never before had any direct sexual contact with a child, and there is nothing in his background to suggest that he would. He has not sought inappropriate relationships with minors; he has not sought employment opportunities that would

---

[2] *See* UNICEF, National Study on Online Sexual Abuse and Exploitation of Children in the Philippines (Nov. 2023), available at https://www.unicef.org/philippines/reports/online-sexual-abuse-and-exploitation-philippines (last visited May 30, 2024).

place him around minors; he has not attempted to communicate with minors online. Nor did he record or otherwise distribute any of the livestream sessions in which he participated.

Mr. Baxter began participating in and paying for these livestream sessions after he completed his term of probation in Prince William County and was no longer monitored. His participation increased after his father's death in 2017, and he continued to spiral downward until his arrest last year. His brother, who had not seen Mr. Baxter for several years until his arrest, described the residence where Mr. Baxter had been living (their parents' house) as a "hoarding" house. PSR ¶ 140.

While nothing can undo the harm that Mr. Baxter has caused to the children, his acceptance of responsibility for his actions and recognition of the severity of the harm he caused are indicative of someone who wants to change and can change and who is committed to working hard to do so.

### c. The Types of Sentences Available and the Advisory Sentencing Guidelines

The statute of conviction in this case requires a lengthy sentence in all cases. For Mr. Baxter, as result of his prior conviction for possession of child pornography for which he served 18 months of imprisonment, the statutory minimum sentence is increased from 15 to 25 years of imprisonment and the maximum is 50 years per count of conviction. The Sentencing Guidelines recommend a sentence of life imprisonment, capped only by the total statutory maximum. For the reasons discussed below, the advisory guideline range in production cases is excessive across-the-board, and to Mr. Baxter specifically, recommending disproportionally harsh sentences and failing to critically distinguish among cases and conduct.

After *Gall* and *Kimbrough*, the fact that a guideline (or amendment to a guideline) was spawned by congressional action is a red flag for lack of empirical basis, raising the question of whether the guideline reflects unsound judgment. *See Gall v. United States*, 552 U.S. 38, 46 n.2 (2007) ("For example, the Sentencing Commission departed from the empirical approach when

setting the Guidelines range for drug offenses, and chose instead to key the Guidelines to the statutory mandatory minimum sentences that Congress established for such crimes."); *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) ("The crack cocaine Guidelines . . . do not exemplify the Commission's exercise of its characteristic institutional role. In formulating Guidelines ranges for crack cocaine offenses, as we earlier noted, the Commission looked to the mandatory minimum sentences set in the 1986 Act, and did not take account of 'empirical data and national experience.'").

That is exactly what occurred in the case of the production guideline applicable here, U.S.S.G. § 2G2.1. The guideline's base offense level of 32 is not based on careful and empirical study by the Sentencing Commission. Instead, it was imposed by the Sentencing Commission to execute Congressional mandates. That is, the base offense level of 32 reflects not the Commission's view of what an appropriate base offense level should be after study, but, instead, Congress's decision in 2003 to increase the mandatory minimum sentence for production offenses from 10 years to 15 years in the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, (the "PROTECT Act"), Pub. L. 108-21.[3]

Thus, as the applicable guideline range begins with a guideline that is not the product of "empirical data and national experience," it is not an abuse of discretion to conclude that it can "yield[] a sentence 'greater than necessary' to achieve §3553(a)'s purposes . . ." *Kimbrough,* 552 U.S. at 110. Indeed, a guideline that does not "exemplify the Commission's exercise of its characteristic institutional role" is not entitled to deference. *Id.*

---

[3] *See* Amendment 664 (2003) (noting that Commission increased § 2G1.2 base offense level from 27 to 32 because, "combined with the application of several specific offense characteristics that are expected to apply in almost all production cases (*e.g.*, age of the victim), this base offense level will ensure that the 15 year mandatory minimum (180 months) will be met in by the Chapter Two calculations almost every case").

Furthermore, the guideline for production does a poor job of distinguishing among offenders because there are several enhancements that apply in the majority of cases, rather than in outlier cases. For example, almost all such offenders will receive enhancement for the "age of the victim," given that all minors other than 17- and 18-year-olds trigger an upward enhancement pursuant to § 2G2.1(b)(1).[4] Likewise, the "sex act or sexual contact" enhancement in § 2G2.1(b)(2) has consistently been applied to increase the guideline range in 70% of cases in FY 2019.[5] And increasing numbers of defendants are subject to the enhancement in § 2G2.1(b)(6) for use of a computer to solicit minors to participate in sexual explicit conduct as computers become more and more a part of every living moment for most people; the enhancement applied in over 45% of cases in FY 2019, and will likely be applied in an even greater percentage of cases when the Commission conducts its next review.[6]

Similarly, more than half of production offenders sentenced in FY 2019 "received enhanced penalties under § 4B1.5(b) for engaging in a pattern of activity involving prohibited sexual conduct"[7] – which is defined to mean sexual contact on at least two occasions -- here, the occasions are the underlying acts of livestream production. This means that circumstances that exist in roughly one out of every two production cases have added 5 levels to Mr. Baxter's

---

[4] *See* U.S. Sent. Comm'n, "Federal Sentencing of Child Pornography Production Offenses" (Oct. 2021) [hereinafter "2021 Commission Production Report"] at 3, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf (last visited May 29, 2024) (showing that over 90% of § 2G2.1(b)(1) offenders received an enhancement due to age of the victim in FY 2019). *See also* Amendment 664 (2003) (noting that this is one of several "several specific offense characteristics that are expected to apply in almost all production cases").

[5] *See id.* at 20 (noting that the crime of production of child pornography "now is committed more often over the internet").

[6] *Id.*

[7] *Id.* at 19 (showing that § 4B1.5(b) was applied in 51.6% of cases in 2019).

guideline range, in addition to the 5 level grouping enhancement that Mr. Baxter received based upon the number of counts to which he pleaded guilty.

Sentencing trends in production cases reflect that many courts agree that although these offenses are indisputably serious, the advisory guideline ranges in these cases are not helpful, or at least too high. Indeed, average sentences between Fiscal Years 2005 and 2019 were consistently lower than the average guideline range.[8] The trend has continued: in Fiscal Years 2021 and 2022, roughly 60% of child pornography production defendants received downward variances.[9]

In these myriad ways, the sentencing guidelines for production offenses fails to meaningfully differentiate among offenders in this type of case.  By recommending the maximum sentence for Mr. Baxter (and many similarly situated defendants), the guidelines provide the Court little guidance.  Moreover, they effectively contradict the statutory mandate to impose the minimally sufficient sentence in each case necessary to accomplish the purposes of sentencing.  For all these reasons, this Court should give little weight to the sentencing guidelines recommendation in this case.

---

[8] 2021 Commission Production Report at 3.

[9] U.S. Sent. Comm'n, "2021 Sourcebook of Federal Sentencing Statistics," Table 32 (showing that, of 523 offenders sentenced under USSG 2G2.1 in FY 2020, 29 received reductions for substantial-assistance or above-range sentences; 28 received other downward departures; of the remaining 440, only 186 cases resulted in within-range sentences, and 280 resulted in downward variances); U.S. Sent. Comm'n, "2022 Sourcebook of Federal Sentencing Statistics," Table 32 (showing that, of 746 offenders sentenced under U.S.S.G. § 2G2.1 in FY 2021, 41 received reductions for substantial assistance or above-range sentences; 28 received other downward departures; of the remaining 677, only 265 cases resulted in within-range sentences, and 412 resulted in downward variances). All Commission Sourcebooks are available at https://www.ussc.gov/research/sourcebook/archive (last visited March 31, 2023).

### d. The Need to Avoid Unwarranted Sentencing Disparities

A sentence of 25 years (300 months) of incarceration in this case will avoid unwarranted sentencing disparities and is appropriate when compared to sentences imposed in this district and for similar or more aggravated conduct, including defendants with prior sex-related convictions. Consider the following cases where sentences between 14 and 17 years were imposed for defendants, albeit who were not recidivists, but who, unlike Mr. Baxter, had direct sexual contact with minors or who were directly communicating with minors to entice them to produce child pornography:

- *United States v. Janes*, 1:23-cr-140 (LMB): sentence of 15 years (mandatory minimum) for a defendant facing sentencing guidelines of life for communicating with multiple teens and at least one preteen victim to coerce them to produce and send CSAM to him, one of whom he arranged to meet in person.

- *United States v. De Vere*, 1:18-cr-345 (LO): 210 months (17.5 years) and 10 years' supervised release for defendant who coerced 16-year-old he met online to send him degrading sadistic sexually explicit images and videos, who coordinated with another adult with similar interests who lived near the minor to have sex with the child and "train" him to become a "slave," who himself traveled by plane to the minor's hometown with a plan to also have sex with the minor before the minor feigned illness to avoid the meeting, and whose electronic devices disclosed attempts to purchase "slaves" to "rape" from individuals advertising the sale of their children, as young as 11 years old.[10]

- *United States v. Sanders*, 1:20-cr-143 (TSE): 216 months (18 years) and lifetime supervised release for defendant found guilty after trial of coercing at least five minors between the ages of 13 and 17 to send him sadistic sexually explicit images and videos, who had victim write degrading messages on himself, who had in person sexual contact with some victims, including one incident when he locked the minor's genitals in a chastity device, and who threatened to send such recordings of the minors engaged in sexual and degrading behavior to people the victims knew if they did not continue to provide what he requested.

- *United States v. Sara*, 1:17-cr-54 (AJT): sentence of 14 years (168 months), followed by a lifetime of supervised release, for a 63 year-old defendant who participated in contemporaneous instant message chatting and webcam live-streaming with adults in Philippines, including streams in which the adults purported to cause minors to engage in sexually explicit conduct, and who

---

[10] Gov't Position, 18-cr-345, ECF No. 35.

- negotiated over the internet to have sex with an 8 year-old minor in the Philippines, engaged in chats with the minor, and traveled to the Philippines three months later, met the 8 year-old on that trip, and, according to the government, engaged in commercial sex with at least one minor in the Philippines during that trip;

- *United States v. Friedel*, 1:14-cr-383 (TSE): 16 years (192 months), followed by 10 years of supervised release, for a 29 year-old defendant who had enticed at least 5 minors to take and send him sexually explicit images of themselves, including one whom he enticed to actually have sex with him (events that he recorded in videos and images), one to whom he distributed other child pornography, and multiple minors he threatened with exposure, jail, and parental abandonment if they did not cooperate with his demands;

- *United States v. Manring*, 1:13-cr-13 (CMH): 14 years (168 months), followed by 3 years of supervised release, for a 54-year-old defendant who had filmed himself performing sexual acts on his own students, who were roughly 5 years old, over a 3-year period in the late 1990s.

Also particularly egregious in terms of the scope and number of victims is the case, *United States v. Funk et al.*, 1:15-cr-172 (TSE), in which the defendants were members of a sophisticated conspiracy to produce and distribute child pornography. The defendants were held accountable for producing more than 9,000 videos of child pornography; at least 137 minor victims were enticed online to engage in sexual activity which was recorded. Posing as minors themselves, the defendants lured their minor victims to produce their own explicit videos by showing them prerecorded videos of other child pornography. *See id*, ECF 170, Govt. Sent. Memo at 2-3. The defendants who were deemed the most culpable – Funk and Hendrix – each received a sentence of 252 months, followed by 10 years of supervised release.

None of the defendants in the above cases had prior sex offense convictions, which the defense recognizes is a relevant factor for consideration under the § 3553(a) factors (and potentially raises the statutory mandatory minimum as well). But their conduct is just as serious and harmful, and in certain cases (such as the defendants in *Funk*) more aggravated than Mr. Baxter's conduct.

Cases with recidivist defendants are also instructive and also support a 25-year sentence for Mr. Baxter. In the first two cases described below, the defendants' prior convictions did not qualify for purposes of increasing the applicable statutory minimum:

- *United States v. Calderon-Velasquez*, 1:13-cr-89 (AJT): 16 years (192 months) for a defendant who blackmailed multiple victims whom he met online, coercing them to produce and send child pornography to him; this defendant also absconded from pretrial supervision. As a young adult, defendant had a prior conviction for having sexual intercourse with a 16-year-old.

- *United States v. Lehofer*, 1:22-r-82 (MSN): 19 years (228 months), followed by lifetime supervision, for a defendant who met a 15-year-old online, coerced her to produce CSAM for him and then threatened to expose her sexually explicit images and send them to her mother if she did not have sexual intercourse with him. Defendant had prior convictions for 2 counts of sexual abuse of 2 separate minors, for which he served 18 months of incarceration.

The defense is aware of two cases in this district in which defendants convicted of production had a prior qualifying sex offense conviction, thus raising the mandatory minimum to 25 years. In both cases, the Court imposed a sentence of 25 years of imprisonment:

- *United States v. Payne Jr.*, 1:13-cr-59 (LMB): 25-year sentence (300 months) for a defendant *on probation for* a *prior conviction for solicitation of a minor* requiring sex offender registration who then met two minor young teenage girls on-line, convinced them to make sexual videos of themselves, travelled and had sexual intercourse with one minor, and was arrested on his way to meet second minor.

- In *United States v. Zottoli*, 1:13-cr-399 (LMB): 25-year sentence (300 months) for a defendant with a *prior conviction for possession of child pornography* (for which he was sentenced to 30 months) who groomed and had anal and oral sex with a minor boy for three years (from ages 10-13) and recorded sexually explicit conduct involving the minor. Investigation revealed an additional minor victim whom defendant also recorded engaging in sexual acts. Defendant also posted photos of one of the minors on-line and posed as the minor in an on-line community devoted to sexual interest in children.

While the above list of production cases is not exhaustive, and recognizing that no two cases are identical, these cases strongly support the mandatory minimum sentence of 25 years for Mr. Baxter. Only two of the cases described above resulted in sentences of 25 years, both of which

reflected the mandatory minimum sentence available. Indeed, the conduct at issue in both *Payne* and *Zottoli* is arguably more aggravated than Mr. Baxter's conduct in that both defendants had direct sexual contact with minors; in defendant Zottoli's case, he greatly compounded the harm by posting photos of one of his victims online.

As reprehensible as Mr. Baxter's conduct was, he did not have direct contact with any minor, or record or otherwise preserve any of the sexual abuse in which he participated; nor did he distribute any of the material in any way. For these reasons, a sentence of 25 years for Mr. Baxter is warranted in order to avoid unwarranted sentencing disparities.

### e. The Need to Impose a Sentence that Achieves Deterrence, Promotes Respect for the Law And Protects the Public

A sentence of 25 years of imprisonment followed by strict monitoring, treatment and supervision is sufficient to achieve deterrence in this case and protect the public. The mandatory minimum sentence – imprisonment for a quarter of a century – appropriately reflects the severity of Mr. Baxter's wrongdoing. Such a sentence also reflects that Mr. Baxter pled guilty, has accepted responsibility, and expressed shame and remorse for his conduct. Mr. Baxter is 51 years old. With a 25-year sentence, he will be in his early to mid-70s at the time of release.[11] Current life expectancy for males in the United States is 74.8 years.[12] Life expectancy rates for those incarcerated are even lower. A 2013 study found that each year of incarceration statistically decreases an individual's life by two years.[13] A sentence of 25 years at least offers

---

[11] Mr. Baxter is not eligible for any First Step Act earned time credit reduction due to the offense of conviction.

[12] Centers for Disease Control and Prevention, Mortality in the United States, 2022, available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.cdc.gov/nchs/data/databriefs/db492.pdf.

[13] Emily Widra, *Incarceration shortens life expectancy*, Prison Policy Initiative, (June 26, 2017), available at

Mr. Baxter a chance to be released from prison, a powerful motivator for someone who seeks rehabilitation and has expressed genuinely a desire to change.

## CONCLUSION

For the foregoing reasons, Mr. Baxter respectfully submits that a sentence of 25 years of imprisonment, followed by lifetime supervision with stringent monitoring conditions and treatment, is sufficient in this case to achieve the goals of sentencing and comports with the parsimony principle of 18 U.S.C. § 3553.

With respect to restitution, the defense has been in contact with representatives for the victims seeking restitution in this case and has reached agreements with nearly all victims. At the present time, one response is still outstanding, but the defense is hopeful that restitution can be resolved by the time of sentencing next week.

With respect to designation, Mr. Baxter requests that the Court recommend that he be designated to FCI Petersburg which has a program for sex offenders.

---

https://www.prisonpolicy.org/blog/2017/06/26/life_expectancy/#:~:text=Each%20year%20in%20 0prison%20takes,life%20expectancy%20by%205%20years.&text=New%20research%20expand s%20the%20notions,post%2Drelease%20barriers%20and%20discrimination ("Time served has a direct correlation to years of life lost").

        Respectfully submitted,
        MICHAEL BAXTER

        By Counsel,

        /s/ Shannon S. Quill
        Shannon S. Quill
        Va. Bar No. 78355
        Counsel for Michael Baxter
        Office of the Federal Public Defender
        Eastern District of Virginia
        1650 King Street, Suite 500
        Alexandria, VA  22314
        Telephone:   703-600-0850
        Facsimile:   703-600-0880
        Shannon_Quill@fd.org